**KOOB & MAGOOLAGHAN**
<u>Attorneys for Plaintiff</u>
By: Alexander A. Reinert
19 Fulton Street, Suite 408
New York, New York 10038
(212) 406-3095

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

**ABDUL SHARIFF,** on behalf of himself and all others
similarly situated,

                                  Plaintiff,

                                                                                        **COMPLAINT**

                  - against -

**GLENN GOORD**, Commissioner of the New York State            JURY TRIAL
Department of Correctional Services, individually and in his       DEMANDED
official capacity; **LESTER N. WRIGHT, M.D., M.P.H.**,
Associate Commissioner/Chief Medical Officer of the
New York State Department of Correctional Services,
individually and in his official capacity; **THOMAS POOLE**,
Superintendent of Five Points Correctional Facility, individually
and in his official capacity; **PETER GREGOIRE, M.D.**,
Medical Director of Five Points Correctional Facility,
individually and in his official capacity; **CORRECTION
OFFICER B. WILLIAMS**; and **NEW YORK STATE
DEPARTMENT OF CORRECTIONAL SERVICES**.

                                  Defendants.
------------------------------------------------------------------------X

**PRELIMINARY STATEMENT**

1.          Plaintiff ABDUL SHARIFF, a prisoner who is currently confined at Five Points

Correctional Facility ("Five Points"), and the class of prisoners he seeks to represent suffer from

serious and debilitating medical conditions from which they are paralyzed and as a result of

which they require a wheelchair for mobility.  As a result, Plaintiff and the putative class require

ongoing treatment and care from medical care providers who have the requisite training and

expertise.  As Plaintiff and other similarly-situated prisoners are currently under the care and

custody of the NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES

("DOCS"), and confined at numerous correctional facilities throughout the State, they are

entirely dependent upon DOCS and outside medical care providers for their treatment.

Nevertheless, despite the severity of their medical needs, Plaintiff and other prisoners who

require a wheelchair for mobility are compelled to travel from the facility to outside medical

providers in wheelchairs that do not meet minimal safety standards and in vans that are unsafe

and incapable of protecting them from injury.  Therefore, Plaintiff ABDUL SHARIFF, an

individual with a disability under federal law, commences this action on behalf of himself and all

others similarly situated to challenge the highly dangerous and discriminatory manner in which

persons with disabilities are transported by DOCS and its employees to outside medical care

facilities.  Relief is sought under the Americans with Disabilities Act, 42 U.S.C. §§ 12132,

12182, Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq., and 42 U.S.C. § 1983 for

violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the

Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343.  Venue is

based upon the Defendants' domiciliary.

## THE PARTIES

3.      Plaintiff ABDUL SHARIFF is a citizen of the United States and is a qualified

individual with a disability under federal law.  At all times relevant to the instant action ABDUL

SHARIFF was in the custody of DOCS and confined at Green Haven Correctional Facility

("Green Haven") or Five Points.

2

4.      Plaintiff and the class he seeks to represent are prisoners with disabilities under federal law, confined to the care and custody of DOCS, who require a wheelchair for mobility.

5.      Defendant GLENN GOORD is and was at all relevant times herein the Commissioner of DOCS and as such is and was the chief executive officer of DOCS.  He is and was responsible for the supervision and administration of DOCS, including but not limited to the provision of medical services to the State's inmates, including ABDUL SHARIFF.  He is sued in his individual and official capacity.

6.      Defendant LESTER WRIGHT, M.D., M.P.H., is and was as at all relevant times herein the Associate Commissioner/Chief Medical Officer of DOCS and as such is and was responsible for the supervision, and administration of the provision of medical services at the State's correctional facilities.  As such, he is and was responsible for the supervision and administration of the provision of medical services to ABDUL SHARIFF.  He is sued in his individual and official capacity.

7.      Defendant THOMAS POOLE is and was at all relevant times herein the Superintendent of Five Points and as such is and was the chief administrative officer of Five Points.  He is and was responsible for the supervision and management of Five Points including but not limited to the provision of medical services to prisoners confined therein, including ABDUL SHARIFF.  He is sued in his individual and official capacity.

8.      Defendant PETER GREGOIRE, M.D. is and was at all relevant times herein the Medical Director at Five Points and as such is and was responsible for the delivery of medical services to prisoners confined at Five Points, including ABDUL SHARIFF.  He is sued in his individual and official capacity.

9.      Upon information and belief, CORRECTION OFFICER B. WILLIAMS is and

3

was at all relevant times employed as a correction officer at Five Points.

10.     Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONAL

SERVICES is the agency created by the State of New York for the purpose of operating prison

facilities within New York State.  Upon information and belief, at all relevant times herein,

DOCS received federal financial assistance for the operation of prison facilities within New

York State, including Five Points.

## FACTUAL ALLEGATIONS

11.     At all relevant times, ABDUL SHARIFF has been incarcerated at either Green

Haven or Five Points.

12.     At the time of his entry into Green Haven, and at all relevant times since, ABDUL

SHARIFF was and has been paralyzed from the waist down and has required a wheelchair for

mobility.

13.     ABDUL SHARIFF is a qualified individual with a disability, as defined under the

Americans with Disabilities Act, 42 U.S.C. § 12102(2) and the Rehabilitation Act, 29 U.S.C. §

705(20).

14.     Upon information and belief, because of the seriousness of ABDUL SHARIFF's

medical condition, and the recognition that ABDUL SHARIFF requires a housing facility that is

accessible to individuals in wheelchairs, ABDUL SHARIFF was housed in the Unit for the

Physically Disabled in Green Haven until on or about May 23, 2003.

15.     On or about May 23, 2003, Mr. SHARIFF was transferred to Five Points and he

remains confined there.

16.     Upon information and belief, prisoners housed in DOCS facilities occasionally

must leave the facility to receive necessary medical care.

4

17.     While housed at Green Haven and Five Points, Mr. SHARIFF has been taken outside of each facility to receive necessary medical care.

18.     Upon information and belief, DOCS has arranged for outside medical providers to provide necessary medical services to prisoners when such services are unavailable at the facility at which the prisoners are incarcerated.

19.     Upon information and belief, DOCS has arranged for outside medical providers to provide medical services to prisoners incarcerated at Five Points who require medical care that cannot be delivered at Five Points.

20.     Upon information and belief, prisoners with serious physical disabilities, including ABDUL SHARIFF and other prisoners who require a wheelchair for mobility, often require necessary medical treatment that is unavailable at the facility at which they are incarcerated.

21.     During the time ABDUL SHARIFF spent confined at Green Haven, he received medical treatment at outside facilities on numerous occasions.

22.     Since ABDUL SHARIFF entered Five Points, he has received medical treatment at an outside facility and reasonably expects to receive medical treatment at an outside facility in the future.


**Unsafe Transportation to and from Outside Medical Providers for Prisoners Who Require A Wheelchair for Mobility**

23.     Upon information and belief, when a prisoner who uses a wheelchair for mobility must travel to an outside provider for a medical appointment, DOCS and its employees transport the prisoner in a van.

5

24.     Upon information and belief, many of the vans used by DOCS are manifestly unsafe for individuals in wheelchairs, as they do not ensure that transport will occur without the risk of serious physical harm occurring.  Specifically, upon information and belief, many of the vans do not adequately secure each prisoner in his wheelchair, creating the risk that a prisoner will be expelled from the wheelchair, causing the prisoner serious bodily injury.

25.     Upon information and belief, when DOCS prisoners are transported in the van used by each facility, they are restrained with handcuffs, leg irons, and/or additional restraints.

26.     Upon information and belief, in the event a prisoner falls from his wheelchair during transportation, his ability to protect himself is substantially diminished by being restrained.

27.     Upon information and belief, DOCS and its employees provide wheelchairs to prisoners who require a wheelchair for mobility.

28.     Upon information and belief, DOCS, GOORD, and WRIGHT are responsible for deciding which wheelchairs will be provided to DOCS prisoners, and DOCS, GOORD, WRIGHT, POOLE, and/or GREGOIRE are responsible for deciding which wheelchairs will be provided to prisoners at Five Points.

29.     Upon information and belief, the wheelchairs which DOCS, GOORD, WRIGHT, POOLE, and/or GREGOIRE issue to each prisoner are not approved for use as a seating surface within a motor vehicle, creating additional risk of serious bodily injury.

30.     Upon information and belief, ABDUL SHARIFF was issued a wheelchair by DOCS, GOORD, and/or WRIGHT that carries a sticker containing the following language: "No wheelchair has been approved for use as a seating surface within a motor vehicle."

31.     Upon information and belief, each wheelchair issued to prisoners by DOCS and

its employees carries a sticker containing the language referenced in paragraph 30.

32.     Upon information and belief, the Owner's Operator and Maintenance Manual issued by the manufacturer of the wheelchair issued to ABDUL SHARIFF by DOCS, GOORD, and/or WRIGHT contains the following language: "Invacare recommends that wheelchair users NOT be transported in vehicles of any kind while in wheelchairs.  As of this date, the Department of Transportation has not approved any tie-down system for transportation of a user while in a wheelchair, in a moving vehicle of any type.  It is Invacare's position that users of wheelchairs should be transferred into appropriate searing in vehicles for transportation and use be made of the restraints made available by the auto industry.  Invacare cannot and does not recommend any wheelchair transportation systems.  AS REGARDS RESTRAINTS – SEAT POSITIONING STRAPS– IT IS THE OBLIGATION OF THE DME DEALER, THERAPISTS AND OTHER HEALTHCARE PROFESSIONALS TO DETERMINE IF A SEATING RESTRAINT IS REQUIRED TO ENSURE THE SAFE OPERATION OF THIS EQUIPMENT BY THE USER.  SERIOUS INJURY CAN OCCUR IN THE EVENT OF A FALL FROM A WHEELCHAIR."

33.     Upon information and belief, the Owner's Operator and Maintenance Manual for each of the wheelchairs issued to prisoners by DOCS and its employees contains the same language as referenced in paragraph 32.

**Plaintiff's First Lawsuit Related to DOCS' Failure to Provide Safe Transport to and From Green Haven**

34.     Upon information and belief, as a result of inadequate training and supervision, inadequate wheelchairs, use of restraints, and use of an inadequate wheelchair van, ABDUL SHARIFF suffered serious physical harm on September 28, 2000, while being transported from

St. Agnes Hospital to Green Haven.

35.     Upon information and belief, while restrained in his wheelchair, the van plaintiff was traveling in made a sharp turn, causing Plaintiff's wheelchair to collapse.  As a result, Mr. SHARIFF was thrust forward where his forehead stuck a support beam within the vehicle, injuring his head and neck.

36.     Upon information and belief, Plaintiff's injuries would not have occurred had the wheelchair van been properly equipped, had Plaintiff not been restrained, had the wheelchair been appropriate for use as a seating device in a vehicle, and/or had correction officers received appropriate supervision and training.

37.     Upon information and belief, prior to the date of Plaintiff's accident, other prisoners in the custody of DOCS who require a wheelchair for mobility had been injured while being transported in the same manner as ABDUL SHARIFF.

38.     On or about February 14, 2001, after being injured, Plaintiff, proceeding pro se, filed a complaint in the Southern District of New York.

39.     Plaintiff secured the representation of counsel and filed a First Amended Complaint on or about September 6, 2002, against Defendants GOORD, DOCS, and others not named in the instant Complaint.

40.      The First Amended Complaint contained allegations similar or identical to the allegations contained above in paragraphs 1 -- 37.

41.     The First Amended Complaint sought, inter alia, injunctive relief requiring Defendants GOORD, DOCS, and others not named in the instant Complaint to transport disabled prisoners who require the use of a wheelchair, including ABDUL SHARIFF, in a safe manner.

42.     On or about May 6, 2003, ABDUL SHARIFF moved The Honorable Deborah A.

Batts, Southern District of New York, for a preliminary injunction, asking that defendants be ordered to transport plaintiffs in a safe manner and with procedures and equipment that are consistent with the ADA.

43.    In support of his motion for preliminary injunction, ABDUL SHARIFF submitted a report prepared by wheelchair transportation expert Dr. Gina Bertocci, Ph.D.

44.    Dr. Bertocci is an Assistant Professor in the University of Pittsburgh's School of Health and Rehabilitation Sciences.

45.    Dr. Bertocci has held the position of Director of the Rehabilitation Engineering Research Center on Wheelchair Transportation Safety since on or about November, 2001.

46.    On March 28, 2003, Dr. Bertocci conducted an inspection of the wheelchair transport van used at Green Haven.

47.    This inspection included a review of the equipment used by Green Haven to transport prisoners who use wheelchairs for mobility, the wheelchairs used during such transport, and the wheelchair securement and occupant restraint techniques used by correction officers responsible for transporting prisoners who use wheelchairs for mobility.

48.    Upon information and belief, the equipment and techniques used at Green Haven are the same as those used at Five Points.

49.    As a result of this inspection, Dr. Bertocci came to the following conclusions: (a) the wheelchair being used to transport ABDUL SHARIFF is not intended for use as a motor vehicle seat and does not meet current American National Standards Institute/Rehabilitation Engineering and Assistive Technology Society of North America ("ANSI/RESNA") standards; (b) the technique used by defendants to secure wheelchair-bound prisoners exposes them to a higher risk of injury; and (c) the failure to properly use the Wheelchair Tiedown and Occupant

Restraint System ("WTORS") exposes wheelchair-bound prisoners to a higher risk of injury.

50.     Dr. Bertocci concluded that the procedures demonstrated by Green Haven personnel were in violation of ADA regulations, industry recommended practice, and guidelines provided by the WTORS manufacturer which are posted in the vehicle.

51.     Dr. Bertocci concluded that the inappropriate wheelchair used to transport passengers, in combination with the poor procedure, will lead to an increased risk of injury during either normal driving maneuvers, emergency driving maneuvers, or a crash.

52.     Dr. Bertocci concluded that to reduce the injury risk, ANSI/RESNA WC-19 compliant wheelchairs should be used for transporting inmates and that those responsible for wheelchair transportation undergo appropriate training.

53.     On or about May 23, 2003, ABDUL SHARIFF was transferred from Green Haven to Five Points.

54.     Upon information and belief, ABDUL SHARIFF did not request or consent to this transfer.

55.     On or about June 9, 2003, Defendants GOORD, DOCS, and others not named in the instant Complaint filed their opposition to Plaintiff's motion for preliminary injunction.

56.     Defendants GOORD and DOCS argued that Plaintiff's motion was moot because ABDUL SHARIFF had been removed from the facility.

57.     Defendants GOORD and DOCS did not dispute any of Dr. Bertocci's conclusions, nor did they present expert testimony of their own.

58.     On or about August 8, 2003, The Honorable Deborah A. Batts entered an Order denying Mr. SHARIFF's motion for preliminary injunction, finding that his transfer to Five Points mooted the action.

**The Continued Failure of DOCS to Provide Safe Transport at Five Points**

59.     Upon information and belief, ABDUL SHARIFF was transported from Green Haven to Five Points in the same unsafe manner as on his trips to ST. AGNES HOSPITAL.

60.     Since his arrival at Five Points, ABDUL SHARIFF has sought assurances that he would be safely transported to outside medical appointments.

61.     Upon information and belief, no such assurances have been given.

62.     Accordingly, until February 10, 2004, ABDUL SHARIFF did not travel outside Five Points for any medical appointments.

63.     On or about February 10, 2004, ABDUL SHARIFF was transported in a van to Auburn Correctional Facility to visit a urology specialist.

64.     Upon information and belief, Defendant WILLIAMS was assigned to transport ABDUL SHARIFF to and from the Auburn Correctional Facility.

65.     Upon information and belief, upon leaving and returning to Five Points on February 10, 2004, Defendant WILLIAMS failed to properly restrain ABDUL SHARIFF with lap and shoulder belts and used a "black box" to restrain him, putting him at a higher risk of injury as documented by Dr. Bertocci's expert report.

66.     A "black box" is a restraint device, used in the transport of prisoners, by which Correction Officers shackle prisoners' hands and feet together and to the device to prevent the possibility of escape.

67.     Upon information and belief, the use of a black box for the transport of wheelchair-bound prisoners serves no legitimate security purpose and subjects wheelchair-bound prisoners to a heightened risk of injury.

68.     Upon information and belief, it is medically inappropriate to transport ABDUL

SHARIFF in a motor vehicle while restrained by a black box.

69.      Upon information and belief, the use of a black box while transporting paraplegic prisoners is prohibited at Green Haven.

70.      Upon information and belief, such prohibition is pursuant to policy to reduce the risk of injury to paraplegic prisoners such as ABDUL SHARIFF.

71.      ABDUL SHARIFF informed Defendant WILLIAMS that due to his medical condition, he is not to be shackled to a black box during transport.

72.      Upon information and belief, Defendant WILLIAMS shackled ABDUL SHARIFF to a black box during the transport despite his protests.

73.      Upon information and belief, Defendant WILLIAMS shackled ABDUL SHARIFF to a black box without confirming that the Five Points medical department approved of using the black box during transport.

74.      Upon information and belief, ABDUL SHARIFF was seated in the van in the same wheelchair deemed unsafe for transport by Dr. Bertocci in her undisputed expert report.

75.      Upon information and belief, Defendant WILLIAMS did not secure ABDUL SHARIFF with a lap or shoulder belt, a technique deemed unsafe by Dr. Bertocci in her undisputed expert report, and which WILLIAMS knew or should have known exposed Mr. SHARIFF to an unnecessary risk of serious physical harm.

76.      Upon information and belief, Defendant WILLIAMS crashed the vehicle on the return from the off-site location.

77.      Upon information and belief, ABDUL SHARIFF was thrown from his wheelchair when the accident occurred.

78.      As a result of the accident, Mr. SHARIFF suffered serious physical injuries to his

right wrist, neck and ribs.

79.     Upon information and belief, Mr. SHARIFF's injuries would have been less severe and/or nonexistent if he had been properly restrained while transported in the van.

80.     Upon information and belief, after the accident, Dr. GREGOIRE willfully and maliciously failed to provide adequate treatment of Mr. SHARIFF's wrist injury from the accident.

81.     Upon information and belief, Dr. GREGOIRE repeatedly ignored Mr. SHARIFF's complaints of wrist pain.

82.     Upon information and belief, Dr. GREGOIRE informed Mr. SHARIFF that he must live with the pain.

83.     Upon information and belief, GREGOIRE informed Mr. SHARIFF that he may have ligament damage or arthritis in the wrist, but for more than eight months made no other effort to diagnose or treat Mr. SHARIFF's wrist injury.

84.     Upon information and belief, GREGOIRE offered Mr. SHARIFF insufficient pain medication for his wrist and nothing else.

85.     Upon information and belief, Mr. SHARIFF's wrist injury causes him extreme pain because Mr. SHARIFF uses his wrist to transfer in and out of his wheelchair.

86.     Upon information and belief, DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE have provided inadequate training and/or supervision of correction officers who are responsible for operating the wheelchair van.

87.     Upon information and belief, Defendants' use of unsafe restraints and unsafe wheelchairs, and Defendants' failure to properly train and/or supervise correction officers responsible for transporting prisoners in wheelchairs has resulted in serious harm and the

foreseeable risk of future serious harm to prisoners with disabilities who require a wheelchair for mobility, solely because of their disabilities.

88. In callous disregard of this substantial risk of bodily harm, DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE continue to provide for the transport of wheelchair-using prisoners while restrained in unsafe wheelchairs, using unsafe restraints, with inadequate training and/or supervision of the officers responsible for transport.

89. Upon information and belief, prisoners who do not require a wheelchair for mobility are transported to outside medical providers in a safe manner.

90. Upon information and belief, Defendants DOCS, GOORD, WRIGHT POOLE, and GREGOIRE knew or should have known the danger to which ABDUL SHARIFF and other prisoners who require a wheelchair for mobility were and are exposed by the inadequate training, use of dangerous restraint mechanisms, inadequate shoulder and lap restraints, and inadequate wheelchairs.

91. Upon information and belief, as a matter of policy and practice, Defendants DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE have failed to remedy this manifestly dangerous situation by providing appropriate training and equipment.

92. Upon information and belief, Defendants DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE maintained their policy and practice of discrimination in the face of the substantial risk of serious physical harm to ABDUL SHARIFF and other prisoners who require a wheelchair for mobility.

93. Upon information and belief, the policy and practice of DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE bears no rational relationship to any legitimate governmental interest and/or is motivated by ill will or animus toward prisoners with disabilities

14

who require a wheelchair for mobility, including ABDUL SHARIFF.

94.     Upon information and belief, evidence of DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE's callous indifference to the risks posed to prisoners who use wheelchairs for mobility consists of, <u>inter alia</u> :  (1) DOCS, GOORD, and WRIGHT's failure, despite being presented with expert evidence that DOCS was using unsafe means to transport prisoners in wheelchairs, to conduct an independent investigation or secure any outside expert opinion as to how to remove the substantial dangers; (2) DOCS and GOORD transferring Mr. SHARIFF to a new facility rather than addressing the substance of his earlier complaint; and (3) DOCS, GOORD, WRIGHT, POOLE, and GREGOIRE continuing to transport prisoners in an unsafe manner for no legitimate penological purpose.

95.     Defendants GOORD, WRIGHT GREGOIRE, POOLE, and WILLIAMS, acting under color of state law, by their actions and/or omissions, demonstrated deliberate indifference to ABDUL SHARIFF's life and safety and/or serious medical needs and deliberate indifference to the life and safety and/or serious medical needs of other prisoners who require a wheelchair for mobility.

96.     Defendants GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS each either knew or should have known of the deficiencies alleged herein which were and are within his/her jurisdiction.

97.     Defendants GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS each knew or should have known that there was a foreseeable risk of serious harm as a result of the deficiencies alleged herein.

98.     As a result of Defendants' GOORD, WRIGHT, GREGOIRE, POOLE, WILLIAMS, and DOCS' mistreatment, ABDUL SHARIFF, solely because of his disability,

experienced extreme pain and suffering, emotional distress, and currently suffers permanent injury.

99.    ABDUL SHARIFF has exhausted his available administrative remedies, to the extent required, by filing and appealing grievances relating to the injuries he received on February 10, 2004.

100.    Although plaintiff disputes that filing a complaint with the United States Department of Justice is an available administrative remedy under 42 U.S.C. § 1997e(a), plaintiff has filed a complaint with the United States Department of Justice.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff bring this action on his own behalf and, pursuant to Rule 23(b)(1), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all prisoners with disabilities, as defined in 29 U.S.C. § 705(20) and 42 U.S.C. § 12102, who require a wheelchair for mobility, and who are now, have been within the past three years, or will in the future be in DOCS custody.

   a.  The exact size of the class is unknown to Plaintiff but he believes there are at least 100 class members and the size of the class is so numerous that joinder of all members is impracticable.

   b.  The conditions, practices and omissions that forms the basis of this complaint are common to all members of the class and the relief sought will apply to all of them.

   c.  The claims of Plaintiff are typical of the claims of the entire class.

   d.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent and varying adjudications that would

establish incompatible standards of conduct for the Defendants.

e.  The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would, as a practical matter, substantially impair the ability of other members to protect their interests.

f.  Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate monetary, injunctive, and declaratory relief with respect to the class as a whole.

g.  There are questions of law and fact common to the members of the class, including Defendants' violations of the Constitution of the United States, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, based on their failure to provide prisoners who require a wheelchair for mobility with equal access to safe transportation and humane medical care.

h.  The questions of law and fact common to the members of the class predominate over questions affecting individual class members.

i.  Proceeding as a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

j.  The named Plaintiff is capable of fairly and adequately representing the class and protecting its interests.  Koob & Magoolaghan, counsel for Plaintiff, is a private civil rights law firm experienced in prisoners' civil rights litigation that, through prior litigation, has secured court-ordered institutional reform within several DOCS-operated prisons.

17

## FIRST CLAIM

102.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 101.

103.    Defendants DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' failure to provide safe transportation to prisoners who require a wheelchair for mobility, including ABDUL SHARIFF, demonstrated deliberate indifference and/or willful neglect to Plaintiff's serious medical needs constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

104.    As a result of Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS jointly and severally in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against DOCS, GOORD, WRIGHT, GREGOIRE, and POOLE, including but not limited to the provision of appropriate equipment and training to DOCS employees.

## SECOND CLAIM

105.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 104.

106.    Defendants DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' failure to provide safe transportation to prisoners who require a wheelchair for mobility, including ABDUL SHARIFF, deprived Plaintiff of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

18

107.    As a result of Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS jointly and severally in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against DOCS, GOORD, WRIGHT, GREGOIRE, and POOLE, including but not limited to the provision of appropriate equipment and training to DOCS employees.

## THIRD CLAIM

108.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 107.

109.    Defendant DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' failure to provide safe transportation to prisoners who require a wheelchair for mobility, including ABDUL SHARIFF, discriminates against qualified individuals with disabilities, including Plaintiff ABDUL SHARIFF, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132.

110.    As a result of DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' violation of Plaintiff's rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against DOCS, GOORD, WRIGHT, GREGOIRE, and POOLE, including but not limited to the provision of appropriate

19

equipment and training to DOCS employees.

## FOURTH CLAIM

111.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 110.

112.    Defendant DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' failure to provide safe transportation to prisoners who require a wheelchair for mobility, including ABDUL SHARIFF, discriminates against qualified individuals with disabilities, including Plaintiff ABDUL SHARIFF, solely by reason of their disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

113.    As a result of DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS' violation of Plaintiff's rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against DOCS, GOORD, WRIGHT, GREGOIRE, POOLE, and WILLIAMS in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against DOCS, GOORD, WRIGHT, GREGOIRE, and POOLE, including but not limited to the provision of appropriate equipment and training to DOCS employees.

## FIFTH CLAIM

114.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 113.

115.    Defendant GREGOIRE's failure to provide adequate treatment of Mr. SHARIFF's wrist injury demonstrated deliberate indifference and/or willful neglect to Plaintiff's serious medical needs constituting cruel and unusual punishment in violation of the Eighth and

Fourteenth Amendments of the United States Constitution.

116.    As a result of Defendant GREGOIRE's violation of Plaintiff's constitutional rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against GREGOIRE in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against GREGOIRE, including but not limited to the immediate provision of treatment of Mr. SHARIFF's wrist injury.

## SIXTH CLAIM

117.    Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 116.

118.    Defendant GREGOIRE's failure to provide adequate treatment of Mr. SHARIFF's wrist injury demonstrated deliberate indifference and/or willful neglect to Plaintiff's serious medical needs and deprived Plaintiff of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

119.    As a result of Defendant GREGOIRE's violation of Plaintiff's constitutional rights, Plaintiff has suffered severe pain and suffering, including unnecessary pain and discomfort, permanent disability and mental distress, and accordingly Plaintiff is entitled to compensatory damages against GREGOIRE in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and appropriate injunctive relief against GREGOIRE, including but not limited to the immediate provision of treatment of Mr. SHARIFF's wrist injury.

## JURY TRIAL DEMANDED

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order granting

Plaintiff's request for certification of this action as a class action; granting Plaintiff compensatory

and punitive damages against Defendants in an amount to be proved at trial on the first through

sixth causes of action; appropriate injunctive relief against Defendants on the first through fourth

causes of action; granting all Plaintiff's reasonable attorneys' fees, costs and disbursements

pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. §1988, the

Americans with Disabilities Act, 42 U.S.C. § 12205, and the Rehabilitation Act, 29 U.S.C. §

794a; and granting such other and further relief as to this Court may seem just and proper.

Dated: December 10, 2004
      New York, New York

                          **KOOB & MAGOOLAGHAN**
                          <u>Attorneys for Plaintiffs</u>
                          By:

                          <u>s:/ Alexander A. Reinert</u>
                          Alexander A. Reinert
                          19 Fulton Street, Suite 408
                          New York, New York 10038
                          Tel.: (212) 406-3095
                          aar@kmlaw-ny.com