# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

ABDUL SHARIFF,

                                  Plaintiff,

           -vs-                                    AMENDED
                                                          DECISION & ORDER
GLENN S. GOORD, Commissioner of the New          04 -CV-6621
York State Department of Correctional Services,
et. al.,

                                  Defendants.

---

**APPEARANCES**

For Plaintiff:                                Alexander A. Reinert, Esq.
                                            Koob & Magoolaghan
                                            19 Fulton St., Suite 408
                                            New York, NY 10038

For Defendants:                          Gary M. Levine, A.A.G.
                                            New York State Office of the Attorney General
                                            144 Exchange Boulevard Suite 200
                                            Rochester, NY 14614

**INTRODUCTION**

      This is an action in which plaintiff alleges violations of his rights as guaranteed by the Fifth, Eighth, and Fourteenth amendments to the United States Constitution, as well as by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Now before the Court is defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), all causes of action set forth in the complaint,

except plaintiff's "First Claim" as it pertains to defendant Williams and plaintiff's "Fifth Claim" which pertains only to defendant Gregoire. Alternatively, as to defendants Goord and New York State Department of Correctional Services ("DOCS"), defendants move to dismiss pursuant to the "first-to-file" rule. For the reasons stated below, defendants' application is granted in part and denied in part.

## BACKGROUND

According to his complaint, plaintiff is presently an inmate within the New York State Department of Correctional Services, and has been during all times relevant to this litigation. In addition, plaintiff has been confined to a wheelchair during his entire period of incarceration. On September 28, 2000, plaintiff was housed at the Green Haven Correctional Facility ("Green Haven") in Stormville, New York. On that date, while in his wheelchair, plaintiff maintains that he was transported by van to an outside medical facility, and that he was injured when the van in which he was traveling made a sharp turn. He claims that the wheelchair he had been issued was not suitable to provide for his safe transport in the van, and that defendant DOCS and defendant, Glen S. Goord ("Goord"), the Commissioner of DOCS, were aware of the unsuitability. On February 14, 2001, in connection with this incident, plaintiff commenced an action in the Southern District of New York.

During the course of that lawsuit, plaintiff moved for a preliminary injunction requiring defendants to transport plaintiff using procedures and equipment consistent with the ADA. In support of his application, plaintiff submitted a report prepared by an expert on wheelchair transportation, Gina Bertocci, Ph.D. The report, which resulted from Dr. Bertocci's March 28, 2003, inspection of the equipment and techniques used at Green Haven for the transportation of prisoners requiring wheelchairs, indicates the following: that

the wheelchair used by Green Haven to transport plaintiff is not intended for use as a motor vehicle seat, and does not meet the current standards of the American National Standards Institute/Rehabilitation Engineering and Assistive Technology Society of North America ("ANSI/RESNA"); that the technique used to secure wheelchair-bound inmates exposes them to a higher risk of injury; and that the failure to properly use the Wheelchair Tiedown and Occupant Restraint System ("WTORS") exposes wheelchair-bound inmates to a higher risk of injury. Dr. Bertocci concluded: that the procedures demonstrated by Green Haven personnel were in violation of ADA regulations, industry recommended practice, and guidelines provided by the WTORS manufacturer, which are posted in the vehicle; that use of the wheelchair that is inappropriate for vehicular transport, together with the poor procedures in place, will lead to an increased risk of injury during normal driving maneuvers, emergency driving maneuvers, or a crash; and that to reduce the risk of injury, ANSI/RESNA WC-19 compliant wheelchairs should be used for the vehicular transportation of wheelchair-bound inmates, and that those responsible for such transportation should undergo appropriate training.

Neither Goord or DOCS disputed any of Dr. Bertocci's conclusions, or presented expert testimony of their own. However, on May 23, 2003, plaintiff was transferred to Five Points Correctional Facility ("Five Points") in Romulus, New York, and subsequently, on August 8, 2003, the Southern District entered an order denying injunctive relief, on the grounds that plaintiff's transfer rendered such application moot.

On February 10, 2004, while incarcerated at Five Points, plaintiff was again transported by van, while in his wheelchair, to another outside medical facility. He claims that, on this occasion, he was injured when the van became involved in a motor vehicle

accident. He also claims that he was not afforded proper medical care for the injuries he received as a result of the accident. Plaintiff further maintains that the equipment and procedures, which are the subject of the action before this Court, are the same as those employed at Green Haven on September 28, 2000.

## STANDARDS OF LAW

**A.     Motion to Dismiss — Failure to State a Cause of Action**

To prevail on a motion for dismissal under Rule 12, a defendant must show that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.). "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true). Under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and that "all pleadings shall be so construed as to do substantial justice," FED. R. CIV. P. 8(f). On a Rule 12(b)(6) motion, the issue before the Court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to

support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

> Finally, while the plaintiff need not set out in detail the facts upon which he bases a claim, he must provide the "defendant fair notice of the nature of the claim and the grounds upon which it rests." *Washington v. James*, 782 F.2d 1134, 1140 (2d Cir. 1986) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 [1957]). Where the allegations are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, they are meaningless as a practical matter and legally insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(*citing Ostrer v. Aronwald*, 567 F.2d 551, 553 [2d Cir. 1977]).

*Parisi v. Coca-Cola Bottling Co.*, 995 F. Supp. 298, 300–01 (E.D.N.Y. 1998).

**B.     Motion to Dismiss — The First-to-File Rule**

The parties agree that the claims made in the complaint against defendants Goord and DOCS in this case are similar to those made against them, by the same plaintiff, in the previously-filed lawsuit in the Southern District of New York. Defendants claim that based on this, the Court should dismiss the claims against these defendants. The Second Circuit has held that, "[t]he first to file rule embodies considerations of judicial administration and conservation of resources." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (1989). In that case, the court also wrote:

> "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience…or…special circumstances…giving priority to the second." *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)….
>
> Balancing factors of convenience is essentially an equitable task. For that reason, an "ample degree of discretion" is afforded to the district courts in determining a suitable forum. *Kerotest Mfg. Co.*, 342 U.S. 180, at 183-84 (1952)….

*Id.* at 79 (some internal citations omitted). Thus, there is a "presumption in favor of allowing the controversy to be adjudicated in the forum where it was first filed," and while a "balance

of convenience…or…special circumstances" may warrant allowing the second suit to go forward, mere concern of an unfavorable outcome is insufficient. *Id.* at 80. Rather the relevant concern is whether the issue can be fully adjudicated in the original forum. *Id*.

In *First City Nat'l Bank & Trust Co.*, the Second Circuit, upon affirming the dismissal without prejudice of the second suit, noted the following:

> We agree…that there are no facts or circumstances in this case which compel departure from the well-settled principle favoring the forum wherein a suit was first filed. Accordingly, the decisions dismissing without prejudice…are affirmed. We note the possibility that the outcome of the [first] action may prompt plaintiff to renew its suit in New York. Should that occur, our holding would not preclude the [plaintiff from doing so].

*First City Nat'l Bank & Trust Co.*, 878 F.2d at 80. Subsequently, in *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000), the circuit court, while affirming, pursuant to the first-to-file rule, the lower court's dismissal of claims that were, in fact, duplicative, reversed as to one claim, "to the extent [it arose] out of events occurring subsequent to the filing of the first…complaint…."

## DISCUSSION

A.     **Motion to Dismiss-Failure to State a Cause of Action**

    1.     **Second and Sixth Causes of Action**

The parties agree that the second and sixth causes of action are to be dismissed.

    2.     **First Cause of Action**

Defendants maintain that the § 1983 claim as alleged against DOCS in plaintiff's first cause of action and as alleged against individual defendants in their official capacities should be dismissed pursuant to the Eleventh Amendment of the United States Constitution. It is, of course, well settled that "absent waiver by the State or valid

congressional override, the Eleventh Amendment bars a damages action against a State in federal court. *Kentucky v. Graham*, 473 U.S. 159, 160 (1985).

The Eleventh Amendment bar, however, applies only to suits for damages; State officials may be sued in their official capacity for injunctive relief.

> "[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.]§ 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Therefore, state officials cannot be sued in their official capacities for retrospective relief under section 1983. *See id.* Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief. *Id.* at 71 n10. Suit can also be brought against them under section 1983 in their individual capacities for both prospective and retrospective relief. *See Hafer v. Melo,* 502 U.S. 21, 23 (1991); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 414 (2d Cir.1999).

*Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005).

Defendants cite *Shariff v. Coombe*, No. 96 Civ. 3001 (BSJ), 2002 U.S. Dist. Lexis 11422 (S.D.N.Y. Jun. 26, 2002), which was an unrelated lawsuit, previously initiated by the plaintiff in the instant case, in support of their contention that the claims against defendants in their official capacities are barred by the Eleventh Amendment. In *Coombe*, however, the court only dismissed "claims for monetary relief pursuant to § 1983 against the . . . [d]efendants in their official capacities." *Id*. In this case, in addition to money damages, plaintiff is also seeking injunctive relief. Therefore, the Court declines to dismiss, as to such relief, either DOCS or the named defendants in their official capacities.

As to the first claim, defendants further argue that, with respect to defendants Goord, Wright, and Poole, plaintiff's "simple allegation that these individuals failed to train and supervise, without more is insufficient" to properly allege personal involvement. (Defs.' Mem. of Law at 12).

"It is well settled in . . . [the Second] Circuit that personal involvement of

> defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). Personal involvement of a supervisory official may be established "by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Id*.

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001).

While defendants' assertion regarding personal involvement may be correct, plaintiff has also alleged that these defendants exhibited deliberate indifference in their failure to train and supervise. (Pl.'s Compl. ¶ 95.) The U.S. Supreme Court has ruled that this may serve as a "basis for § 1983 liability…." *City of Canton v. Harris*, 489 U.S. 378 (1989) (holding that the inadequacy of police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.).

The Court agrees with plaintiff that he has made allegations that are sufficient under more than one of these alternatives. In that regard, plaintiff has set forth in his complaint the findings of Dr. Bertocci, discussed above, relating to wheelchair safety. These were provided to DOCS and went undisputed well in advance of the incident that forms the basis of this lawsuit. Plaintiff allegations that Goord, Wright, an Associate Commissioner and Chief Medical Officer of DOCS, and Poole, the Superintendent of Five Points, were aware of or should have been aware of the danger posed by the use of a wheelchair inappropriate for vehicle transport and by inadequate training of DOCS personnel are sufficient to

establish personal involvement at the pleading stage where "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d at 378.

### 3. Third and Fourth Causes of Action

It is well settled that neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials. However, beyond individual capacity suits, defendants argue that Title II of the ADA and § 504 of the Rehabilitation Act do not allow state actors to be sued in their official capacities. The Court disagrees. Defendants do not dispute that, pursuant to the holding in *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001), the Eleventh Amendment does not bar an action against DOCS for money damages under either the ADA or Rehabilitation Act. Since the Eleventh Amendment only shields individual defendants in their official capacities to the same extent that it shields DOCS, it follows that the individual defendants may be sued in their official capacities for violating the ADA and the Rehabilitation Act. *See id.* at 107.

With respect to plaintiff's ADA and Rehabilitation Act claims, defendants further argue that his allegations on these causes of action are insufficient. While in paragraphs 93 and 94 of his complaint, plaintiff references defendants' "ill will or animus toward prisoners with disabilities who require a wheelchair for mobility" and "callous indifference to the risks posed to prisoners who use wheelchairs for mobility," defendants contend that these assertions are not enough, that "plaintiff must allege 'irrational discriminatory animus or ill will' and 'deliberate indifference' to plead a valid cause of action." (Defs.' Mem. of Law

at 10.) However, defendants offer no authority to substantiate their contentions. In any event, the Court finds that, at the pleading stage, the difference between what defendants claim plaintiff should have alleged, and what plaintiff did allege, amounts to a distinction without a difference.

Additionally, defendants contend that plaintiff, in order to support a Title II ADA claim, must show he was "excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability…." (Pl.'s Mem. of Law at 11(*quoting Johnson v. Goord*, No. 01 Civ. 9587 (PKC), 2004 U.S. Dist. Lexis 19658 (S.D.N.Y. Sep. 29, 2004)).) Defendants maintain that plaintiff fails to make the necessary allegations, claiming only that the manner in which he was transported to receive medical services was improper. The Second Circuit has held that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). The court must "focus on the particular services provided by [defendants]…." *Id.* The service in the instant case is not medical care, but the safe transportation to receive it. Plaintiff has made detailed allegations regarding the unsafe nature of his transportation for medical care. He has also alleged that inmates that are not wheelchair-bound are transported safely. Therefore, plaintiff has met his burden with respect to claiming a denial of a service for reason of his disability.

B.      **Motion to Dismiss — First-to-File Rule**

Defendants argue that the claims against Goord and DOCS that are before this Court are virtually the same as the claims pending in the Southern District in connection with the September 28, 2000, incident, and therefore should be dismissed as duplicative

pursuant to the first-to-file rule. The Court disagrees. In this action, plaintiff seeks injunctive relief against Goord and DOCS, which the Southern District has declined to consider, because plaintiff's transfer from Green Haven rendered it moot. Moreover, this case involves an event that occurred subsequent to plaintiff's filing in the Southern District. Additionally, this action involves claims of money damages against Goord and DOCS that will remain regardless of the result in the Southern District.

## CONCLUSION

Accordingly, defendants' motion to dismiss (# 8) is granted with respect to the second and sixth causes of action, and otherwise denied.

IT IS SO ORDERED.

Dated: August 2, 2005
       Rochester, New York

        ENTER.


        /s/ Charles J. Siragusa
        CHARLES J. SIRAGUSA
        United States District Judge