# United States District Court
# Western District of New York

---

ABDUL SHARIFF, on behalf of himself and all others
similarly situated,

Plaintiff,

-vs-

GLENN GOORD, Commissioner of the New York
State Department of Correctional Services,
individually and in his official capacity, *et al.*

Defendant.

AMENDED
DECISION and
ORDER
04-CV-6621 CJS(F)

---

## APPEARANCES

For plaintiff:                     Alexander A. Reinert, Esq.
                                   Koob & Magoolaghan
                                   South Street Seaport
                                   19 Fulton Street Suite 408
                                   New York, NY 10038
                                   (212) 406-3095

For defendants:                    Gary M. Levine, Esq.
                                   New York State Office of the Attorney General
                                   144 Exchange Boulevard Suite 200
                                   Rochester, NY 14614
                                   (585) 327-3223

## INTRODUCTION

This prisoner civil rights case is before the Court on plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23. The proposed class is "all prisoners in the custody of the New York State Department of Correctional Services who must now or in the future use a wheelchair for mobility…." (Pl.'s Notice of Motion at 1-2.) For the reasons that follow, plaintiff's motion (# 27) is granted.

## BACKGROUND

The following information is taken from plaintiff's complaint. During the period encompassed by this lawsuit, plaintiff has been incarcerated within the New York State Department of Correctional Services ("DOCS"), confined at either Green Haven Correctional Facility ("Green Haven"), or Five Points Correctional Facility ("Five Points"). Plaintiff is paralyzed from the waist down and requires a wheelchair for mobility. He alleges that he is a qualified individual with a disability, as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(2) and the Rehabilitation Act, 29 U.S.C. § 705(20). He further states that because of his medical condition, he requires a facility that is accessible to individuals in wheelchairs. Consequently, he was housed in the Unit for the Physically Disabled in Green Haven until on or about May 23, 2003. Then he was transferred to Five Points.

Plaintiff alleges that DOCS has arranged for outside providers to furnish necessary medical services to prisoners, when such services are unavailable at the facility at which the prisoners are incarcerated. Prisoners with serious physical disabilities, including plaintiff and others who require a wheelchair for mobility, often need necessary medical treatment that is unavailable at the facility in which they are incarcerated. During the time plaintiff spent confined at Green Haven, he received medical treatment at outside facilities on numerous occasions. Moreover, since he entered Five Points, he has received, and expects to receive in the future, medical treatment outside the prison.

Plaintiff further alleges that when prisoners who use wheelchairs for mobility must travel to an outside medical provider, DOCS transports them in a van. He also asserts

that many of the vans used by DOCS are manifestly unsafe for individuals in wheelchairs, since they do not ensure that transport will occur without the risk of serious physical harm. Specifically, plaintiff contends that many of the vans fail to provide that a wheelchair-bound prisoner is adequately secured, and that this failure creates the risk that the prisoner will be expelled from the wheelchair during transport. Further, plaintiff asserts that when prisoners in wheelchairs are transported, they are restrained in such manner that, in the event a prisoner falls from his wheelchair during transport, his ability to protect himself is substantially diminished.

Plaintiff also contends that defendants Goord and Wright are generally responsible for deciding which wheelchairs will be provided to DOCS' prisoners, and that defendants Goord, Wright, Poole, and/or Gregoire are specifically responsible for deciding which wheelchairs will be provided to prisoners at Five Points. Furthermore, plaintiff asserts that the wheelchairs themselves create additional risk of serious bodily injury, since they are not approved for seating use within a motor vehicle.

Plaintiff goes on to allege he was issued a wheelchair by DOCS, Goord, and/or Wright that carries a sticker containing the following language: "No wheelchair has been approved for use as a seating surface within a motor vehicle." He further alleges, that each wheelchair issued by DOCS carries a sticker containing the same language. In addition, plaintiff asserts that the Owner's Operator and Maintenance Manual issued by the manufacturer of the wheelchair issued to him, and all other inmates, contains the following language:

> Invacare recommends that wheelchair users NOT be transported in vehicles of any kind while in wheelchairs. As of this date, the Department of Transportation has not approved any tie-down system for transportation

of a user while in a wheelchair, in a moving vehicle of any type. It is Invacare's position that users of wheelchairs should be transferred into appropriate sea[t]ing in vehicles for transportation and use be made of the restraints made available by the auto industry. Invacare cannot and does not recommend any wheelchair transportation systems. AS REGARDS RESTRAINTS – SEAT POSITIONING STRAPS – IT IS THE OBLIGATION OF THE DME DEALER, THERAPISTS AND OTHER HEALTHCARE PROFESSIONALS TO DETERMINE IF A SEATING RESTRAINT IS REQUIRED TO ENSURE THE SAFE OPERATION OF THIS EQUIPMENT BY THE USER. SERIOUS INJURY CAN OCCUR IN THE EVENT OF A FALL FROM A WHEELCHAIR.

(Compl. ¶ 32.) Plaintiff further contends that the Owner's Operator and Maintenance Manual for each of the wheelchairs issued to prisoners by DOCS and its employees contains the same language as referenced above.

With regard to his specific injury, plaintiff alleges that as a result of inadequate training and supervision, an inadequate wheelchair, inadequate means of transportation, and due to the use of restraints, he suffered serious physical harm on September 28, 2000, while being transported from St. Agnes Hospital to Green Haven. While restrained in his wheelchair, plaintiff states that the van in which he was traveling made a sharp turn, causing his wheelchair to collapse. As a result, plaintiff claims he was thrust forward and that his forehead stuck a support beam within the vehicle, injuring his head and neck. Plaintiff also maintains that, prior to the date of the incident, other prisoners in DOCS's custody who required a wheelchair for mobility, had been injured in a similar fashion.

As a result of the September 2000 incident, plaintiff states that, on February 14, 2001, he filed a *pro se* complaint in the Southern District of New York. After obtaining counsel in that action, he filed a First Amended Complaint on or about September 6,

2002, against Defendants Goord, DOCS, and others not named in this case. That First Amended Complaint contained allegations similar or identical to the allegations contained in paragraphs 1-37 of the complaint here. Through his Southern District lawsuit, plaintiff states that he sought, *inter alia*, injunctive relief requiring the named defendants, including Goord, and DOCS, to transport disabled prisoners who require the use of a wheelchair in a safe manner. Then, on or about May 6, 2003, plaintiff moved The Honorable Deborah A. Batts, Southern District of New York, for a preliminary injunction, asking that defendants be ordered to transport plaintiffs in a safe manner and with procedures and equipment that are consistent with the ADA.

In support of his motion for preliminary injunction in the Southern District lawsuit, plaintiff submitted a report prepared by Gina Bertocci, Ph.D., whom plaintiff identified as a wheelchair transportation expert. According to the complaint, Dr. Bertocci is an Assistant Professor in the University of Pittsburgh's School of Health and Rehabilitation Sciences. Dr. Bertocci has held the position of Director of the Rehabilitation Engineering Research Center on Wheelchair Transportation Safety since on or about November, 2001. On March 28, 2003, Dr. Bertocci conducted an inspection of the wheelchair transport van used at Green Haven. This inspection included a review of the equipment used by Green Haven[1] to transport prisoners who use wheelchairs for mobility, the wheelchairs used during such transport, and the wheelchair securement and the occupant restraint techniques used by corrections officers responsible for transporting such prisoners.

---

[1]Plaintiff contends in his complaint in this lawsuit the equipment and techniques used at Green Haven are the same as those used at Five Points.

As a result of this inspection, Dr. Bertocci came to the following conclusions: (a) the wheelchair being used to transport plaintiff is not intended for use as a motor vehicle seat and does not meet current American National Standards Institute/Rehabilitation Engineering and Assistive Technology Society of North America ("ANSI/RESNA") standards; (b) the technique used by defendants to secure wheelchair-bound prisoners exposes them to a higher risk of injury; and (c) the failure to properly use the Wheelchair Tiedown and Occupant Restraint System ("WTORS") exposes wheelchair-bound prisoners to a higher risk of injury. Dr. Bertocci concluded that the procedures demonstrated by Green Haven personnel were in violation of ADA regulations, industry recommended practice, and guidelines provided by the WTORS manufacturer which are posted in the vehicle. Dr. Bertocci further concluded that the inappropriate wheelchair used to transport passengers, in combination with the poor procedure, will lead to an increased risk of injury during either normal driving maneuvers, emergency driving maneuvers, or a crash. Dr. Bertocci recommended that to reduce the injury risk, ANSI/RESNA WC-19 compliant wheelchairs should be used for transporting inmates and that those responsible for wheelchair transportation undergo appropriate training.

On or about May 23, 2003, plaintiff was transferred from Green Haven to Five Points. Plaintiff asserts that he did not request or consent to this transfer. On or about June 9, 2003, defendants filed their opposition to plaintiff's motion for preliminary injunction in the Southern District lawsuit, arguing that plaintiff's application was moot because he had been removed from Green Haven. In his complaint in this case, plaintiff maintains that Goord and DOCS in the Southern District lawsuit, did not dispute any of Dr. Bertocci's conclusions. On or about August 8, 2003, Judge Batts entered an Order

denying plaintiff's motion for preliminary injunction, finding that his transfer to Five Points did moot the action. Order, *Shariff v. Greiner*, No. 01-CV-1140-DAB-DFE (S.D.N.Y. Aug. 8, 2003).

Plaintiff claims that he was transported from Green Haven to Five Points in the same unsafe manner as complained of in the Southern District action. He alleges that since his arrival at Five Points, he has sought assurances that he would be safely transported to outside medical facilities, but no such assurances have been given. Accordingly, until February 10, 2004, plaintiff states that he did not travel outside Five Points for any medical appointments.

On or about February 10, 2004, plaintiff was transported in a van to Auburn Correctional Facility ("Auburn") to visit a urology specialist. Defendant Williams was assigned to transport him to and from Auburn. Upon leaving and returning to Five Points on February 10, 2004, plaintiff alleges that Williams failed to properly secure him and that Williams used a "black box"[2] to restrain him. Plaintiff contends that, based upon by Dr. Bertocci's expert report, Williams' conduct put him at a higher risk of injury. Moreover, plaintiff also alleges that the use of a black box while transporting paraplegic prisoners is prohibited at Green Haven. Plaintiff states, that although he informed Williams that due to his medical condition he should not be shackled to a black box during transport, Williams ignored his protests and shackled him to the black box anyway. Plaintiff further contends that was transported in the same type of wheelchair

---

[2]Plaintiff explains in his complaint that, "a 'black box' is a restraint device, used in the transport of prisoners, by which Correction Officers shackle prisoners' hands and feet together and to the device to prevent the possibility of escape." (Compl. ¶ 66.)

deemed unsafe for transport by Dr. Bertocci in her report, and that Williams did not secure plaintiff with a lap or shoulder belt. Because of this, plaintiff alleges that Williams knew or should have known that he was exposing plaintiff to a serious risk of harm.

Plaintiff alleges that while returning to Five Points, Williams crashed the vehicle, causing plaintiff to be thrown from his wheelchair. He maintains that as a result, he suffered serious physical injuries to his right wrist, neck and ribs.

Plaintiff's complaint contains six causes of action. Plaintiff alleges that defendants' failure to provide safe transportation to prisoners who require a wheelchair for mobility, including plaintiff: (1) demonstrated deliberate indifference and/or willful neglect to plaintiff's serious medical needs constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution; (2) deprived plaintiff of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution; (3) discriminates against qualified individuals with disabilities, including plaintiff, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132; (4) discriminates against qualified individuals with disabilities, including plaintiff, solely by reason of their disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (5) Dr. Gregoire's failure to provide adequate treatment of plaintiff's wrist injury demonstrated deliberate indifference and/or willful neglect to plaintiff's serious medical needs constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution; and (6) Defendant Gregoire's failure to provide adequate treatment of plaintiff's wrist injury demonstrated deliberate indifference and/or willful neglect to his serious medical needs and deprived him of liberty and property without

due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution. For each of his causes of action, plaintiff seeks compensatory and punitive damages, as well as appropriate injunctive relief.

## THE RULE 23 STANDARD

Plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23, subparagraphs (a), (b)(1)(A), (b)(1)(B) and (b)(2), which state:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

>> (1) the prosecution of separate actions by or against individual members of the class would create a risk of

>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

>> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

Fed. R. Civ. P. 23(a), (b)(1)(A), (b)(1)(B) and (b)(2) (2006). The party seeking class certification has the burden of demonstrating that Rule 23's requirements are satisfied. *Caridad v. Metro-North Commuter Railroad*, 191 F.3d 283, 291 (2d Cir. 1999)(citation omitted), *cert. denied*, 529 U.S. 1107 (2000); *see also*, 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.60[2] ("[A] class action must satisfy each of the requirements of Rule 23, and the plaintiff must plead more than a simple reiteration of those requirements in conclusory allegations. Instead, the plaintiff should allege facts demonstrating that all of the requirements for bringing a class action are fulfilled.") (citation omitted). It is well settled that before certifying a class, a district court must conduct a "rigorous analysis" to determine whether or not Rule 23's requirements have been met.[3] *Caridad v. Metro-North Commuter Railroad*, 191 F.3d at 291. However, the court should not inquire into the merits of the plaintiffs' underlying claims. *Id*.(citation omitted). Moreover, courts are required to construe Rule 23's requirements liberally. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968). Courts should resolve doubts about whether or not Rule 23 has been satisfied in favor of certification. *In re Industrial Diamonds Litigation*, 167 F.R.D. 374, 378 (S.D.N.Y. 1996)(citations omitted).

---

[3]Neither Rule 23, nor the vast majority of cases interpreting it identifies a particular burden of proof on the plaintiff. *See, e.g., Shepherd v. Babcock & Wilcox of Ohio*, No. C-3-98-391, 2000 WL 987830 at *1 n. 5 (S.D. Ohio, Mar. 3, 2000)("Although many . . . reported decisions state that the party seeking certification carries this burden, research has found only one reported case that defines that burden, whether as being the preponderance of evidence or otherwise."). According to a leading treatise on the subject of class actions, that is because "[b]urden of proof concepts are generally more applicable to proof of facts or evidence and do not comfortably fit in determinations respecting whether a particular procedural device has been properly invoked or should be permitted to be maintained." 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 7.17 (3d ed. 1992). The Newberg treatise further indicates that the plaintiff's burden under Rule 23 is merely a burden to plead facts indicating that Rule 23 is satisfied, which then creates a rebuttable presumption in favor of class certification. *Id*. at §§ 7.19-7.20. If the defendant rebuts this presumption by producing contrary evidence, the burden of production then shifts back to the plaintiff to produce counter-affidavits or other evidence. *Id*. at § 7.26 The Court must then exercise its discretion to determine whether class certification is appropriate. *Id*. at § 7.27

# ANALYSIS

### *Timeliness of the Motion to Certify*

The Court must first address defendants' argument that plaintiff's motion to certify a class is untimely. Western District of New York Local Rule of Civil Procedure 23 states in pertinent part as follows:

> Within 120 days after the filing of a pleading alleging a class action, unless this period is extended on motion for good cause filed prior to the expiration of said 120-day period or in the scheduling order, the party seeking class certification shall move for a determination under Federal Rule of Civil Procedure 23(c)(1) as to whether the case is to be maintained as a class action.

W.D.N.Y. Loc. R. Civ. P. 23(d) (2003). The complaint in this case was filed on December 20, 2004, and the motion for class certification was filed on October 4, 2005, 288 days later. However, as counsel notes in his affirmation, defendants moved to dismiss the case in lieu of filing an answer. Consequently, issue was not fully joined until July 21, 2005, after the Court adjudicated defendants' motion to dismiss. Additionally, plaintiff's counsel raised the issue of class certification at a July 14, 2005 conference with the undersigned, and the Court advised the parties to discuss the possibility of settling plaintiff's injunctive claims before bringing a motion for class certification. Plaintiff's counsel initiated settlement negotiations by letter dated June 8, 2005, and the Court ordered the parties to report within thirty days of the conference. By letter dated August 25, 2005, counsel for defendants advised the Court and plaintiff's counsel that settlement was not a viable possibility. Therefore, consistent with the Court's instructions, plaintiff's counsel filed the instant motion 82 days after the Court's direction at the July 14, 2005

conference. Furthermore, on September 7, 2005, the parties met with Judge Feldman, to whom the case had been referred pursuant to 28 U.S.C. § 636, and at that conference, they discussed the schedule for filing the class certification motion. (Reinert Affirmation ¶ 45.) Court and counsel agreed that plaintiff would file his motion for class certification within 30 days of the September 7 conference. (*Id*.) The instant motion is filed within that time period.

Accordingly, the Court determines that plaintiff has filed his motion in a timely manner, since the scheduling instructions from the two judges involved in this case extended the time for filing a motion for class certification for good cause shown.

### Article III Case or Controversy – Standing

Defendants argue that the only controversy involved in this plaintiff's case is not connected with "the alleged systematic improprieties…." (Def.s' Mem. of Law at 10.) In that regard, defendants contend that "plaintiff can only show harm from failing to wear a seatbelt[.]" Therefore, they argue that the remainder of his allegations about DOCS's transportation methods are abstract, that he has not suffered an injury in fact, and, consequently, he does not have standing to represent the class. (*Id.* at 11.) Thus, defendants maintain that the Court is without jurisdiction under Article III of the Constitution to grant the class certification sought by plaintiff. The Court disagrees.

It is certainly true, as plaintiff himself concedes, in order to have standing to act as the class representative, he must first,

> have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury

has to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and footnote omitted).

However, as plaintiff also points out, the Second Circuit held, in *Baur v. Veneman*, 352 F.3d 625, 633-34 (2d Cir. 2003), a case involving food and drug safety, that, "threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes." *See also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir. 2004) ("defendants' dilution and eventual destruction of plaintiffs' collateral amounts to the requisite 'injury-in-fact' for Article III purposes, even if that injury is not sufficiently definite for RICO purposes."); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 574 (6th Cir. 2005) ("Sutton has alleged sufficient facts, when accepted as true, to suggest an increased risk of future harm resulting from being implanted with St. Jude's device. Whether Sutton is likely to prevail on the merits is not a proper consideration at this time."); *Harvey v. Veneman*, 396 F.3d 28, 34 (1st Cir. 2005) ("Harvey alleges that he has suffered an injury in fact because the challenged regulations weaken the integrity of the organic program and the standards it sets forth. This weakening harms Harvey as a consumer of organic foods because it degrades the quality of organically labeled foods. The magistrate judge properly held that this claimed harm represents concrete, redressable injury sufficient to confer Article III standing with respect to most of the counts in Harvey's complaint.").

The Court finds that plaintiff's allegations meet the requirements of an justicable controversy and that he has standing to represent the class he seeks to certify. He has alleged an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. He has also alleged a causal connection between the injury complained of and defendants' conduct and it is likely that the injury will be redressed by a favorable decision.

### Rule 23(a) and (b) Factors

The Court will now proceed to analyze the four requisite factors for class certification as set forth in Rule 23(a) have been satisfied, and then whether plaintiff has met any of the alternative requirements of Rule 23(b).

### Rule 23(a)(1) Numerosity

Plaintiff's proposed class is described in the complaint as follows:

> Plaintiff bring this action on his own behalf and, pursuant to Rule 23(b)(1), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all prisoners with disabilities, as defined in 29 U.S.C. § 705(20) and 42 U.S.C. § 12102, who require a wheelchair for mobility, and who are now, have been within the past three years, or will in the future be in DOCS custody.

(Compl. ¶ 110.) Plaintiff alleges that the actual size of the class is unknown, but that "he believes there are at least 100 class members and the size of the class is so numerous that joinder of all members is impracticable." (Compl. ¶ 110a.) A plaintiff need not establish the precise number of class members in order to satisfy the numerosity requirement. *McNeill v. New York City Housing Authority*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348, 1359 (S.D.N.Y.1982), *app. dism'd* 781 F.2d 314 (2d Cir.1984). "It is permissible for [a] plaintiff to rely on reasonable

inferences drawn from the available facts. Furthermore, the lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action where the defendants alone have access to such data. *See Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y.1980)." *McNeill*, 719 F. Supp. at 252. Defendants do not specifically dispute that plaintiff's allegations meet the numerosity requirement, but to the extent that their arguments could be construed as putting this requirement in issue, the Court finds that plaintiff's allegations of approximately 100 potential class members, as well as the effect on future wheelchair-bound inmates, meets the numerosity requirement.

### *Rule 23(a)(2) Commonality*

Rule 23(a)(2)'s commonality requirement "is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citations omitted). Commonality will not be "defeated by the possibility that the proof required to demonstrate 'injury' might be highly individualized." *In re Sumitomo Copper Litigation v. Credit Lyonnais Rouse Ltd.*, 262 F.3d 134, 141 (2d Cir. 2001) (citations omitted). Here, the defense specifically argues that plaintiff will be unable to show commonality because the Court must consider the available defenses to individual claim when determining whether class certification is appropriate. (Def.s' Mem. of Law at 7.) Plaintiff counters that the only unique defenses relevant to the Court's consideration on this motion are any that go to his claims for injunctive relief. (Pl.'s Reply Mem. of Law at 3.) The Southern District has held that where the "claims of all proposed class members derive from the same … policies and procedures, and are based on the same legal theories," the commonality requirement is met. *McNeill*, 719 F. Supp. at 252. "There is no requirement that 'the factual background of each named plaintiff's claim be

identical to that of all class members.' *Caridad* [*v. Metro-North Commuter R.R.*, 191 F.3d 283,] 29 [(2d Cir.1999).]; *see Cromer* [*Finance Ltd. v. Berger*,] 205 F.R.D. [113,] 122 (S.D.N.Y.2001)." *Ingles v. City of New York*, No. 01 Civ. 8279, 2003 WL 402565, *5 (S.D.N.Y. Feb. 20, 2003). In the instant case, the Court finds that plaintiff has demonstrated the existence of several common issues, most notably the allegation that defendants have failed and will continue to fail to safely transport prisoners who use wheelchairs in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth Amendment. (Pl.'s Mem. of Law at 10.) Plaintiff has explained that he seeks class certification only on his claims for declaratory and injunctive relief, not the damages claims for his alleged injuries after he was transported in a wheel chair without a safety restraint. (*Id*.) Accordingly, Rule 23(a)(2) is satisfied.

### Rule 23(a)(3) Typicality

Defendants argue that plaintiff has not met the typicality requirement of Rule 23(a)(3) since plaintiff's "lawsuit is nothing more than a negligence claim for failing to use a seat belt on an inmate in a wheelchair and should not be allowed to become a federal class action lawsuit." (Def.s' Mem. of Law at 1.) It is well settled that

> Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). Moreover, "[d]ifferences in the damages sustained by individual class members does not preclude

a showing of typicality, nor defeat class certification." *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998)(citations omitted). In the instant case, it is clear that the typicality requirement is satisfied.

As to typicality, defendants maintain "[p]laintiff's lawsuit will face unique factual and legal defenses…." (Def.s' Mem. of Law at 8.) In that regard, defendants ask the Court to examine the merits of plaintiff's claim. However, at this stage of the proceedings, it is well settled that a court should not examine the merits. As the Supreme Court cautioned in *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974):

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '(a)s soon as practicable after the commencement of (the) action….' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (5th Cir. 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:

> 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'

> *Id.* at 427.

> Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

*Eisen*, 417 U.S. at 177-78. In any event, as plaintiff correctly points out,"the 'unique defenses' alleged by defendants to exist … boil down to an argument about causation of plaintiff's injuries." (Pl.'s Reply Mem. of Law at 3.) That is, the "unique defenses" relate only the incident of September 28, 2000. Here, as plaintiff argues, "[a]ny prisoner who uses a wheelchair for mobility will be harmed by defendants' failure to take adequate steps to assure that safe transportation services are provided to such prisoners." (Pl.'s Mem. of Law at 11.) Accordingly, the Court finds that Rule 23(a)(3) is satisfied since all claims arise out of the same practices alleged to be illegal and unconstitutional in plaintiff's complaint and that Rule 23(a)(3) is satisfied.

### *Rule 23(a)(4) Adequacy*

To satisfy Rule 23(a)(4), a plaintiff must demonstrate that "class counsel is qualified, experienced, and generally able to conduct the litigation," and that "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A.*, 126 F.3d at 378 (Citations omitted). Defendants' papers do not object to plaintiff's choice of counsel, and the Court finds that counsel is adequate. (*See* Reinert Affirmation ¶ 33, Ex. A.)

To determine whether plaintiff is an adequate class representative, the Court must consider two factors: "(1) absence of conflict and (2) assurance of vigorous prosecution." *Robinson v. Metro-North Commuter Railroad*, 267 F.3d 147, 170 (2d Cir. 2001) (citation omitted), *cert. denied* 122 S. Ct. 1349 (2002). "Courts do not require the representative plaintiff to be the best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual

basis on which a class action can be maintained." *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d at 242 (citation omitted). In this Circuit, it is clear that class representatives need not be especially knowledgeable, although "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable and unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 61 (2d Cir.2000)(citation omitted). In this case, plaintiff is a paraplegic who relies on a wheelchair for mobility and is frequently transported outside the prison in motor vehicles under the conditions about which he complains. (*See* Compl. ¶ 1.) The Court finds that plaintiff is sufficiently knowledgeable, able, and motivated to represent the class and, has, therefore, satisfied the requirements of Rule 23(a)(4).

### Rule 23(b)

The Court will now turn its attention to whether plaintiff has satisfied one of the alternate requisites of Rule 23(b). On this issue, the only argument defendants offer as to why plaintiff has not satisfied the requirements of Rule 23(b) are as follows: (1) the Eleventh Amendment bars the relief plaintiff is seeking (addressed by the Court below); and (2) that, "[t]he Court will have to determine if the class is ascertainable," (Def.s' Mem. of Law at 17). As to this latter point, defendants also suggest that any allowed class be limited to "DOCS inmates who use a wheelchair during vehicular transportation." Plaintiff has not opposed this suggestion and the Court finds that it accurately defines the population plaintiff seeks to represent in this lawsuit. Therefore, the Court need only consider defendants' Eleventh Amendment argument.

Defendants contend in their memorandum in opposition to class certification that the Eleventh Amendment bars plaintiff's request for equitable relief in the form of training for DOCS employees. (Def.s' Mem. of Law at 17.) However, the Court finds defendants' argument to be unpersuasive. In *Armstrong v. Davis*, 275 F.3d 849, 875-76 (9th Cir. 2001) the Ninth Circuit permitted injunctive relief requiring the California Board of Prison Terms (the state parole authority) to "provide training for all persons under its jurisdiction…." *Id*. at 876. Additionally, the Ninth Circuit found an independent basis for effectively granting injunctive relief against the State of California. The Court wrote:

> Furthermore, *Garrett* makes clear that there is another, independent basis for the implementation of the injunction: there is no barrier to the injunction against Nielson in his official capacity as Secretary of the Board. *Garrett*, explicitly stated that "our holding here … does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by … private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)." *Board of Trustees v. Garrett*, 531 U.S. 356, 121 S. Ct. at 968, n. 9. Because the injunction requires Secretary Nielsen to comply with its provisions, it would remain in force even if relief could not be ordered against the Board, and its effect would, for all practical purposes be the same. For the reasons set forth above, the state is not immune from suit. Morever, the injunction would be effective as to Secretary Nielsen in any event.

*Armstrong*, 275 F.3d at 879. Furthermore, as plaintiff points out in his Reply Memorandum, the Court's focus at this stage in the litigation is not whether the relief sought will be granted, but, rather, whether plaintiff has asked for relief that would benefit the purported class. *See Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994) ("Plaintiffs' complaint falls within Rule 23(b)(2)[.] Defendants' failure to act is said to be institutional not merely a cumulation of individual cases. The final injunctive and declaratory relief requested here would inure to the benefit of all class members in

gaining a timely processing of their applications for benefits."). Plaintiff's claims, therefore, satisfy the requirements of Rule 23(b)(2).[4]

***Appointment of Counsel***

Plaintiff seeks to have Alexander A. Reinert, Esq., of Koob & Magoolaghan, South Street Seaport, 19 Fulton Street Suite 408, New York, NY 10038, appointed counsel for the class pursuant to Rule 23(g). The Court has examined Mr. Reinert's qualifications (*see* Reinert Affirmation, Ex. A and notes also that defendants have not imposed any objection to this request. Accordingly, the Court appoints Mr. Reinert as class counsel.

## CONCLUSION

Based upon all of the foregoing, the Court finds that plaintiff has satisfied the requirements of Rule 23(a) and 23(b)(2). Accordingly, the Court hereby grants plaintiff Abdul Shariff's motion (# 27) for class certification. The class consists of DOCS inmates who use a wheelchair during vehicular transportation. Further, the Court appoints Alexander A. Reinert, Esq., as class counsel. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(A), the Court does not order that notice be made to the class.

IT IS SO ORDERED.

Dated:   July 20, 2006
          Rochester, New York

ENTER:

/s/ Charles J. Siragusa
Charles J. Siragusa
United States District Judge

---

[4]Since the Court has determined that the class can be certified under Rule 23(b)(2), it will not address plaintiff's alternative arguments that the class can also be certified under Rule 23(b)(1)(A) and (b)(1)(B) as well.